UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION


CRYSTAL HOFMANN,                          )
                                          )
              Plaintiff,                  )
                                          )
       vs.                                )          3:10-cv-37-SEB-WGH
                                          )
ASPEN DENTAL MANAGEMENT, INC.,  )
                                          )
              Defendant.                  )


**ORDER DENYING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


       This cause is now before the Court on Plaintiff's Motion for Partial Summary

Judgment [Docket No. 25], filed on July 22, 2010; Defendant's Motion for Summary

Judgment [Docket No. 74], filed on December 23, 2010, and Defendant's Amended

Motion to Disqualify Counsel [Docket No. 98], filed on January 31, 2011.  Plaintiff,

Crystal Hofmann, brings this action against her former employer, Defendant, Aspen

Dental Management, Inc. ("Aspen"), alleging that Defendant retaliated against her in

violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., the

Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq*., and the Age

Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*.[1]  Having

_____

       [1] Ms. Hofmann has also brought a claim against Defendant pursuant to the FLSA's
overtime provision, but that claim is not the subject of any of the motions addressed herein.

considered the parties' briefing and documentary evidence filed in connection with these motions, the Court <u>DENIES</u> Defendant's Motion to Disqualify, <u>DENIES</u> Plaintiff's Motion for Summary Judgment and <u>DENIES</u> Defendant's Motion for Summary Judgment.

## Factual Background

Ms. Hofmann began working as a dental assistant for Aspen Dental in the Aspen West office located in Evansville, Indiana, on March 6, 2008. As a dental assistant, Ms. Hofmann's daily schedule was dictated by patient need and flow. Each morning, she, along with other employees in the Aspen West office, received a "provider schedule" that contained information regarding that workday's patient flow and the employee's expected work assignments for the day. Ms. Hofmann often wrote notes to herself on the provider schedules she received in order to remind herself of things she needed to do as well as to track her work assignments and work hours. However, while employed with Aspen Dental, Ms. Hofmann officially recorded the hours she worked each day and each work week using a computer time clock.

## Plaintiff's First Termination

In the latter part of April 2009, Ms. Hofmann spoke to Aspen Regional Manager Gabe Hofmann[2] when he made his monthly visit to the Evansville office and stated that she believed her then-supervisor, Monica Daly, who was at that time the Aspen West

---

[2] To our knowledge, Plaintiff and Gabe Hofmann are not related.

Office Manager, had intentionally altered employees' electronic time entries in an effort to keep overtime costs low and decrease overhead attributable to the office Daly managed. According to Ms. Hofmann, not long after she complained to Mr. Hofmann, Ms. Daly confronted her and stated that she (Daly) was aware of the accusation that had been made. According to Ms. Hofmann, this concerned her, and she subsequently began discussing her wages and other concerns with her co-workers.

On May 6, 2009, Ms. Hofmann was disciplined by Ms. Daly and Megan Boger, who was then the Aspen West Assistant Office Manager, because Hofmann was "gossiping" and discussing her wages with other employees after having previously received a verbal warning not to do so. A few weeks later, on May 18, 2009, Regional Manager Hofmann sent an email to all of the office managers in his region, including Ms. Daly, which stated in pertinent part:

> ... Timeclock – Legally we can not adjust recorded punches of employees. We can add missed punches and edit according to errors, but can't change time punched for whatever reason ....

Exh. 2 to Compl. Approximately a month later, on June 3, 2009, Ms. Hofmann was again disciplined, this time for her participation in a confrontation with a co-worker, Amy Toone. Ms. Hofmann contends that although Ms. Toone was equally at fault, she was not disciplined following the incident. Two weeks later, on June 18, 2009, Aspen Dental terminated Ms. Hofmann, citing as the reasons that she was "negative," that employees complained about her, and that she continued to discuss wages in the workplace.

**Plaintiff's Complaints to Administrative Agencies and Subsequent Rehiring**

In the month following her termination, Ms. Hofmann filed a number of complaints against Aspen Dental with various administrative organizations. On the same day she was terminated, Ms. Hofmann made a report to the National Insurance Crime Bureau ("NICB") alleging that Aspen Dental was engaged in fraudulent billing practices. On July 1, 2009, Ms. Hofmann filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that Aspen Dental had discriminated against her because of her age and disability. Ms. Hofmann also filed a complaint with the Department of Labor ("DOL") on July 16, 2009 claiming that Aspen Dental had violated the FLSA.

On July 31, 2009, Ms. Hofmann's attorney, Mary Schiff, wrote a letter to Aspen Dental's then-counsel informing him that she was representing Ms. Hofmann "with regard to her FLSA and discrimination claims against Aspen Dental" and that Ms. Hofmann "filed an EEOC charge and has also talked with the DOL, wage and hour division." Exh. D to Hofmann Aff. In the letter, Ms. Schiff also stated that Ms. Daly had called Ms. Hofmann that day and offered her her job back and that Ms. Hofmann had accepted the offer after Ms. Daly promised that she (Hofmann) would return with a "clean slate." Id. However, Ms. Toone, one of Ms. Hofmann's co-workers, testified by affidavit that before Ms. Hofmann returned to work, Ms. Daly and Mr. Hofmann held a meeting with all of Ms. Hofmann's co-workers and told them that Hofmann was returning on a "probationary period," that management was going to be "watching" her, and that her co-workers should report to Ms. Daly or Mr. Hofmann any problems they

encountered with her. Toone Aff. ¶ 6. Aspen Dental denies that any such meeting occurred.

## Plaintiff's Alleged Misconduct and Second Termination

Ms. Hofmann returned to work as a dental assistant for Aspen Dental on August 10, 2009. On September 24, 2009, Ms. Brown, who had been promoted to Office Manager, telephoned Ms. Daly[3] to discuss Ms. Hofmann's past behavior, her pending claims against Aspen Dental, and her poor attitude. Ms. Daly instructed Ms. Brown to counsel Ms. Hofmann. On that same day, Ms. Brown and Dr. Woo, a dentist for whom Ms. Hofmann often worked, met with Ms. Hofmann and told her that she was being "negative" toward Aspen Dental and that she was having too many discussions about her lawsuit against the company. According to Ms. Hofmann, Ms. Brown specifically told her that she was not being terminated for her behavior but that they wanted to "nip things in the bud." Hofmann Aff. ¶ 18. Aspen concedes that Ms. Hofmann was told that she was not being written up for her behavior but denies that she was told she would not be terminated for her behavior. Ms. Brown testified by affidavit that the counseling meeting was a final effort to bring about improvements in Ms. Hofmann's attitude before making the final decision as to whether she should be terminated. Brown Aff. ¶ 4.

Despite having been instructed to stop discussing her lawsuit at the office, either later on September 24th or the next day, Friday, September 25th, Ms. Hofmann had a

---

[3] Ms. Daly had by that point been promoted to Area Manager and was subsequently promoted to Regional Manager, which is the position she currently holds.

conversation with her co-worker, Stacey Mackey, about wage issues. During that conversation, Ms. Hofmann stated that, in furtherance of one of her claims against the company, she had given her attorney a number of the provider schedules that Aspen Dental employees received daily. Ms. Hofmann contends that she gave the provider schedules to her attorney because she had written "notes" on them to "establish[] the dates and times she worked for Aspen" as support for her FLSA claim. Docket 26 at 8. Aspen Dental argues that majority of the provider schedules removed by Ms. Hofmann either contained no notes or had notes that were unrelated to Hofmann's compensation or hours worked. Docket No. 99 at 2-3 (citing Exh. A to Preston Aff.).

Ms. Mackey repeated the conversation she had had with Ms. Hofmann to Ms. Brown, who in turn repeated it to Ms. Daly and Sue Decker, Aspen Dental's Vice President of Human Resources. Specifically, Ms. Mackey reported that Ms. Hofmann had said she had given the provider schedules to her attorney in furtherance of a lawsuit other than her EEOC claim, but did not specify which claim that actually was. After receiving this report from Ms. Mackey, neither Ms. Decker nor Ms. Daly immediately spoke with Ms. Hofmann regarding the previously disclosed provider schedules,[4] either to instruct Hofmann to stop removing them or to inquire as to why she had given them to her attorney.

Ms. Hofmann was absent from work on Monday, September 28th and Tuesday,

_____

[4] It is unclear whether Ms. Decker and Ms. Daly were informed of the conversation on Thursday, September 24th or Friday, September 25th.

September 29th, due to illness. However, shortly after Ms. Hofmann clocked into work on Wednesday, September 30th, Ms. Brown informed her that her employment with Aspen Dental was being terminated because she had violated the Health Information Portability and Accountability Act ("HIPAA") by removing provider schedules from the office.[5] According to Aspen Dental, at the time Ms. Hofmann was terminated Ms. Decker was the only Aspen West employee involved in the decision making process who knew that Ms. Hofmann had been in contact with the DOL and that Hofmann's FLSA concerns were based on her belief that Ms. Daly had altered her time card entries to avoid paying her overtime. Decker Aff. ¶ 7.

Following her termination, Ms. Hofmann requested that Aspen Dental provide her with a written statement explaining its reasons for her termination. On October 14, 2009, Ms. Hofmann received the written statement from Aspen reciting that "the decision to terminate [her] employment was based on [her] egregious act of removing confidential HIPAA protected information from the office" in addition to the issues about which she had previously been counseled, to wit, her negative attitude and frequent discussions with other employees regarding her lawsuit and wage issues. Am. Ans. ¶¶ 59-60. In that same letter, Aspen Dental advised Ms. Hofmann that she was to "immediately return all documents containing HIPAA protected information that is either in your possession or

---

[5] The provider schedules contained protected health information as defined under the HIPAA regulations, which prohibit disclosure of such information except in certain limited circumstances. See 42 U.S.C. § 1320d-5 (civil monetary penalties for violation of the privacy rules by covered entities); 42 U.S.C. § 1320d-6 (criminal penalties for wrongfully obtaining, using, or disclosing protected health information by any person).

that of your attorney."  Exh. 5 attached to Complaint.

## Attorney Schiff's Involvement

Following Ms. Hofmann's termination, then-counsel for Aspen Dental telephoned Attorney Schiff (Ms. Hofmann's attorney) and left a voicemail requesting that Attorney Schiff return the HIPAA-protected information she had in her possession.  In her response via email, Attorney Schiff stated, "I am curious to find out what HIPAA information Aspen believes [Ms. Hofmann] took from the office."  Docket No. 34-7.  Three weeks later, after Aspen Dental's initial demand for the return of the provider schedules, Attorney Schiff represented that the documents would remain confidential, but she declined to return them, claiming that Ms. Hofmann was acting as a whistleblower under HIPAA[6] when she removed the provider schedules and disclosed them to counsel.

_____

[6] HIPPA's whistleblower provision, 45 C.F.R. § 164.502(j), provides in relevant part as follows:

(1) Disclosures by whistleblowers.  A covered entity is not considered to have violated the requirements of this subpart if a member of its workforce or a business associate discloses protected health information, provided that:

(i) The workforce member or business associate believes in good faith that the covered entity has engaged in conduct that is unlawful or otherwise violates professional or clinical standards, or that the care, services, or conditions provided by the covered entity potentially endangers one or more patients, workers, or the public; and

(ii) The disclosure is to:

(A) A health oversight agency or public health authority authorized by law to investigate or otherwise oversee the relevant conduct or conditions of the covered entity or to an appropriate health care accreditation organization for the purpose of reporting

(continued...)

8

**Defendant's Confidentiality Policies**

It is undisputed that all newly hired employees at Aspen Dental are required to participate in an orientation process during which they are cautioned that they will be given access to patients' confidential health information in the course of their duties. As part of the orientation, employees receive HIPAA-compliance training in order to learn the approved procedures for protecting the privacy of such information. All new employees are also given a copy of Aspen Dental's Employee Handbook, which provides in relevant part that the "[f]ailure to follow all work rules or procedures, including State and Federal regulations such as HIPAA ... will result in disciplinary action, up to and including immediate termination." Docket No. 76-4 (Excerpts from Handbook). Aspen Dental employees also are required to execute a confidentiality agreement upon hiring, acknowledging that they will be given possession of "patient files [and] patient lists" during the course of their employment and that "dissemination of this information to third parties would cause substantial damage to Aspen Dental" and "violating any provision of this agreement may result in disciplinary action, up to and including termination." Docket No. 76-5 (Confidentiality Agreement). Ms. Hofmann executed her confidentiality

---

[6](...continued)
the allegation of failure to meet professional standards or misconduct by the covered entity; or

(B) An attorney retained by or on behalf of the workforce member or business associate for the purpose of determining the legal options of the workforce member or business associate with regard to the conduct described in paragraph (j)(1)(i) of this section.

agreement on March 10, 2008.

Ms. Hofmann alleges that, despite these policies, in practice Aspen Dental did not protect the confidentiality of the provider schedules and did not discipline other Aspen West employees who removed them from the office. According to Ms. Toone and Jodi Puntney, two of Ms. Hofmann's co-workers, the provider schedules that were distributed to Aspen West employees on a daily basis were not collected at the end of the day nor was there a written policy addressing how employees were expected to use and dispose of them. Toone Aff. ¶¶ 8-9; Puntney Dep. at 53-54. Christine Bartley, a former Aspen West employee who received training for a management position from Ms. Daly while employed at Aspen Dental, similarly testified by affidavit that she was never told that employees were prohibited from removing the provider schedules from the office or that the provider schedules were to be kept confidential because they contained patient health information that had to be protected pursuant to HIPAA regulations. Bartley Aff. ¶¶ 7-8, 12-13. Ms. Toone testified by affidavit that provider schedules were generally sitting out in public view in every work location as well as the break room so that anyone, including patients, visitors, and the cleaning staff, could have easily viewed or taken them. Toone Aff. ¶¶ 12-13. Aspen West employees also reportedly disposed of provider schedules on a frequent basis in office trash cans without shredding them or otherwise disposing of them in a secure manner.[7] Id. ¶ 15; Puntney Dep. at 58.

---

[7] Ms. Toone testified that she, however, would shred by hand the provider schedules she
(continued...)

## Alleged Misconduct of Other Employees

There is evidence in the record before us indicating that Aspen West employees besides Ms. Hofmann removed provider schedules from the office on certain occasions, but were not disciplined. Ms. Bartley, for example, testified that she had on a number of occasions taken provider schedules home in her pocket accidentally and that, although she was sure other employees had done the same, she was unaware of any employee other than Ms. Hofmann being disciplined for removing provider schedules from the Aspen West office. Bartley Aff. ¶¶ 9, 14. Ms. Toone attested to having witnessed other employees remove provider schedules from the office, including Stacey Mackey, who left provider schedules in her vehicle that were folded in such a way that anyone riding in the passenger seat could have read the information contained therein. Toone Aff. ¶ 18. Although it appears that Ms. Mackey did not receive discipline for such behavior, there is also no indication that Aspen Dental was aware of her actions. Finally, when Aspen West employees were asked in the wake of Ms. Hofmann's termination whether they had ever engaged in similar behavior, to wit, removing provider schedules from the premises, Jennifer Magee, one of Ms. Hofmann's co-workers, stated that on one occasion she may have accidentally taken a provider schedule home in her pocket, but that she returned it the next day. Ms. Magee did not receive any form of discipline after this admission. Brown Dep. at 113-14.

---

[7](...continued)
was given before disposing of them. Toone Aff. ¶ 17.

Ms. Hofmann alleges that a number of other employees also complained around the office about each other and about Ms. Daly, but none was disciplined as she was for being "negative" or gossiping. According to Ms. Hofmann, although she and co-worker Ms. Toone often bickered back and forth, she (Ms. Hofmann) was the only one who was ever disciplined for such behavior. One of Ms. Hofmann's fellow dental assistants, Ms. Mackey, testified that Ms. Puntney (also a dental assistant) had complained to her about Ms. Daly on a number of occasions and that she, herself, had complained about most of her co-workers, including Ms. Toone, Ms. Brown, Megan Boger, and Dr. Woo, but that she had neither been counseled or otherwise disciplined for these complaints. Although the evidence conclusively shows that other employees were not disciplined for such behavior, Ms. Brown, the current office manager at Aspen West, testified by deposition that "everyone had an equal part in any drama that occurred in our office" because "[e]veryone stirs stuff up." Brown Dep. at 42.

### The Instant Litigation

On March 10, 2010, Ms. Hofmann filed her original complaint in the instant lawsuit alleging violations of FLSA and Title VII retaliation. She subsequently amended her complaint thirteen months later, on April 29, 2011, to add a claim for unpaid overtime wages pursuant to the FLSA. On September 7, 2011, she sought to change her Title VII retaliation claim to allege retaliation in violation of the ADA and ADEA. The three motions currently before us are: Plaintiff's Motion for Summary Judgment on the FLSA

retaliation claim, Defendant's Motion for Summary Judgment on both retaliation claims, and Defendant's Motion to Disqualify Plaintiff's Counsel. We address each in turn below, beginning with the motion to disqualify counsel.

## Legal Analysis

### I.      Motion to Disqualify

Aspen Dental has moved to disqualify Ms. Hofmann's attorney, Mary Schiff, arguing that Attorney Schiff's continued representation of her in this matter is violative of Rules 1.2(d), 1.16., and 3.7 of the Indiana Rules of Professional Conduct.

#### A.      Indiana Rule of Professional Conduct 3.7

Aspen Dental contends that Attorney Schiff must be disqualified from representing Ms. Hofmann in this matter because Schiff's "ongoing involvement regarding relevant facts has rendered her a necessary witness under Rule 3.7 of the Indiana Rules of Professional Conduct." Def.'s Br. at 15. Rule 3.7 provides in relevant part that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

Being both an advocate and a witness "can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Ind. R. Prof.

Conduct 3.7, Cmt. 1. Thus, "[t]he opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation." Id., Cmt. 2. In situations such as the case at bar where exceptions (1) and (2) are not applicable, courts apply a balancing test that weighs the interest of the client and the interests of the opposing party to determine if disqualification is necessary. See Hutchinson v. Spanierman, 190 F.3d 815, 828 (7th Cir. 1999).

The primary consideration under Rule 3.7 is whether the attorney is a "necessary witness." Knowledge A-Z, Inc. v. Sentry, Ins., 857 N.E.2d 411, 418 (Ind. Ct. App. 2007) (citations omitted). "A necessary witness is not the same thing as the 'best' witness." Harter v. University of Indianapolis, 5 F. Supp. 2d 657, 665 (S.D. Ind. 1998). "If the evidence that would be offered by having an opposing attorney testify can be elicited through other means, then the attorney is not a necessary witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it certainly is not necessary." Id. If the court determines that the attorney is a necessary witness, it must then assess whether the client's interest in continued representation outweighs the risk of prejudice to the opposing party. Hutchinson, 190 F.3d at 828.

Here, Aspen Dental asserts that Attorney Schiff is a necessary witness because she will be required: (1) to admit the July 31, 2009 letter she authored addressing Ms. Hofmann's contact with the DOL as well as to testify as to its content and meaning; and (2) to testify regarding the circumstances surrounding Ms. Hofmann's removal and subsequent delivery to Attorney Schiff of the provider schedules. We address these

arguments in turn.

In the underlying lawsuit, Ms. Hofmann relies on the July 31, 2009 letter written by Attorney Schiff to Aspen Dental to establish that Defendant was aware before it terminated her that she had "filed a complaint with the DOL" and thus had engaged in protected activity under the FLSA. Defendant contends that this is a mischaracterization of the content of the letter, which states only that Ms. Hofmann "talked with the DOL," not that she filed a written complaint. In light of this discrepancy, Defendant asserts that it intends to call Attorney Schiff to testify as to the letter's "content and disputed meaning." Aspen Dental's rationale supporting the necessity of Attorney Schiff's testimony is based on the Seventh Circuit's distinction between verbal and written complaints under the FLSA discussed in Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834 (7th Cir. 2009), vacated, 131 S.Ct. 1325 (2011), in which the court held that verbal complaints were insufficient to constitute protected activity under the Act.

However, the Supreme Court recently vacated and remanded the Seventh Circuit's decision in Kasten, holding that a verbal complaint is sufficient to constitute protected activity under the FLSA. 131 S.Ct. at 1330-36. Thus, Defendant's argument regarding the necessity of Attorney Schiff's testimony regarding the "disputed meaning" of the July 31, 2009 letter is moot. The letter speaks for itself and there are available witnesses other than Attorney Schiff who can admit the document. Accordingly, we see no reason why Attorney Schiff's anticipated testimony regarding the July 31, 2009 letter would be

15

necessary.

Aspen Dental next asserts that Attorney Schiff is a necessary witness whom it intends to call to testify as to "her involvement in Plaintiff's misappropriation of confidential health information from Aspen Dental and Plaintiff's purported whistleblower status [under HIPAA]." Def.'s Reply at 9. Aspen Dental contends that Attorney Schiff's testimony regarding the extent to which she instructed Ms. Hofmann to make notes on the provider schedules and disclose them to her is necessary in order to determine whether Ms. Hofmann's actions did in fact fall within HIPAA's whistleblower provision because, if Attorney Schiff requested that Ms. Hofmann collect the information, Hofmann is not a whistleblower. See Standards for Privacy of Individually Identifiable Health Information, 64 Fed. Reg. 59,918-01 (Nov. 3, 1999) (Section § 164.502(j) does "not apply to information requested ... by attorneys, even prior to an investigation or law suit. It would apply only to disclosure initiated by a member of an entity's workforce ....").

However, we view the issue of whether Ms. Hofmann was in fact a whistleblower under HIPAA as largely irrelevant to resolving her FLSA retaliation claim. In support of that claim, Ms. Hofmann argues that Aspen Dental's proffered non-discriminatory reason for her termination, to wit, her alleged HIPAA violation, was pretext for retaliation, in violation of the FLSA. Accordingly, the relevant question is not whether Ms. Hofmann's conduct *actually* violated HIPAA, but merely whether, at the time it terminated her, Aspen Dental *honestly believed* that her conduct violated HIPAA. E.g., O'Leary v.

16

<u>Accretive Health, Inc.</u>, ___ F.3d ___, 2011 WL 4375684, *8 (7th Cir. Sept. 21, 2011) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge.") (citation omitted). Thus, we are not persuaded that Attorney Schiff's testimony regarding the circumstances surrounding Ms. Hofmann's removal and disclosure to Schiff of the provider schedules is material to resolving the claims at issue. For these reasons, we hold that Attorney Schiff's continued representation of Ms. Hofmann does not portend or otherwise involve a violation of Rule 3.7.

**B.  Indiana Rules of Professional Conduct 1.2 and 1.16**

Aspen Dental also argues that Attorney Schiff's knowledge of Ms. Hofmann's removal and disclosure of the provider schedules necessitates disqualification, pursuant to Rules 1.2(d) and/or 1.16 of the Indiana Rules of Professional Conduct. Rule 1.2(d) provides: "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law." IND. R. PROF. CONDUCT 1.2(d). The comments to Rule 1.2(d) address the situation in which, during the course of representation, an attorney discovers her client is engaging in illegal conduct. In such circumstances, "[a] lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the

17

representation of the client in the matter." IND. R. PROF. CONDUCT 1.2, Cmt. 10.

Alternatively, Aspen Dental contends that Attorney Schiff violated Rule 1.16, which

provides that "a lawyer shall not represent a client, or where representation has

commenced, shall withdraw from the representation of a client if ... the representation will

result in violation of the Rules of Professional Conduct or other law." IND. R. PROF.

CONDUCT 1.16(a)(1).

Aspen Dental argues that, although it is not entirely clear what actually occurred,

Attorney Schiff either instructed Ms. Hofmann to remove and disclose the provider

schedules, thereby counseling Hofmann to violate HIPAA, or, at the very least, Schiff

should have known that, in accepting documents containing individually identifying

health information, Hofmann's disclosure of such was a violation of HIPAA. Defendant

contends that Attorney Schiff thus knowingly violated Rule 1.2(d) and/or Rule 1.16,

either by counseling or assisting Ms. Hofmann in engaging in conduct violative of

HIPAA or by refusing to return the provider schedules to Aspen Dental and continuing to

represent Ms. Hofmann after Aspen alerted Schiff that she was in possession of

confidential health information. Plaintiff rejoins that because her disclosure of the

provider schedules to Attorney Schiff was protected activity under HIPAA's

whistleblower provision, Schiff's acceptance of those documents was not violative of

either Rule 1.2(d) or Rule 1.16.

Again, we do not find disqualification to be an appropriate remedy in the situation

before us. Initially, we are not persuaded, based solely on the facts presented to us for

purposes of deciding this motion to disqualify, that Attorney Schiff's receipt of the provider schedules and failure to return them to Aspen Dental clearly violates Rules 1.2(d) or 1.16. Moreover, if Defendant believes that Attorney Schiff violated Rules 1.2 and/or 1.16 during her representation of Ms. Hofmann, there are alternative avenues of enforcement of the disciplinary code available to be pursued, if necessary. However, the parties have made no mention of any sort of disciplinary procedures affecting or growing out of this litigation that have been initiated against Attorney Schiff. These reasons, coupled with the fact that, as discussed above, we find that Attorney Schiff's involvement in Ms. Hofmann's alleged misappropriation of the provider schedules neither creates a conflict of interest that would prevent her representation of Ms. Hofmann nor is relevant to resolving the narrow issues presented in this litigation, fail to call into question Attorney Schiff's ability to effectively advocate for her client or to suggest that her alleged misconduct threatens to seriously undermine her effectiveness in this matter so as to require disqualification. For these reasons, Defendant's Motion to Disqualify is DENIED.

## II. Cross-Motions for Summary Judgment

### A. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party

and draws all reasonable inferences in favor of the non-moving party.  See id. at 255.

However, neither the "mere existence of some alleged factual dispute between the

parties," id. at 247, nor the existence of "some metaphysical doubt as to the material

facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will

defeat a motion for summary judgment.  Michas v. Health Cost Controls of Illinois, Inc.,

209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence

to support the non-moving party's case.  Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle

for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th

Cir. 1994).  Thus, after drawing all reasonable inferences from the facts in favor of the

non-movant, if genuine doubts remain and a reasonable fact-finder could find for the

party opposing the motion, summary judgment is inappropriate.  See Shields Enter., Inc.

v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg,

870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." Kohl v. Ass'n of Trial Lawyers of Am., 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

**B.     Retaliation Claims**

Ms. Hofmann contends that the two nondiscriminatory reasons Aspen Dental has cited as grounds for her termination, to wit, that she removed and disclosed provider schedules to her attorney in violation of HIPAA and that she was "negative" and disruptive in the workplace, are pretextual, and that the actual reason she was terminated was in retaliation for filing a claim with the DOL and/or a charge with the EEOC alleging

discrimination in violation of the ADA and ADEA. In advancing this claim, it appears from Ms. Hofmann's briefing that she is relying solely on the direct method of proof to demonstrate retaliation.

Under the direct approach, a plaintiff must present sufficient evidence to establish that: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. Jones v. Res-Care, Inc., 613 F.3d 665, 671 (7th Cir. 2010) (citation omitted). "A plaintiff can prevail under the direct method by showing an admission of discrimination or by 'constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" Ridings v. Riverside Med. Ctr., 537 F.3d 755, 771 (7th Cir. 2008) (quoting Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006)). In addition to these elements, the direct method of proof contains an inherent requirement that the decisionmaker have actual knowledge of the protected activity. Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004). There is no dispute that Ms. Hofmann's September 30, 2009 termination constitutes an adverse employment action,[8]

_____

[8] In addition to her termination, Ms. Hofmann contends that she was also treated adversely when Aspen Dental held a meeting upon her re-hire to alert her co-workers that management would be watching her very closely and when she was required to submit to counseling on September 24, 2009 because of her poor attitude, even though other employees did not receive discipline for similar conduct. Even if true, these complaints do not amount to actionable adverse employment actions. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." Nagle v. Village of Calumet Park, 554 F.3d 1106, 1116 (7th Cir. 2009) (quoting Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 780 (7th Cir. 2007)). "Rather, an employee must show that material harm has resulted from . . . the challenged actions." Traylor
(continued...)

so we focus solely on whether she engaged in protected conduct under the relevant statutes, whether Aspen Dental was aware of that activity at the time it took action against her, and whether that conduct was causally related to her termination.

### 1. Protected Activity

As we have noted previously, Ms. Hofmann engaged in protected activity under the ADA, ADEA, and the FLSA when she filed a charge with the EEOC and a complaint with the DOL on July 1, 2009, and July 16, 2009, respectively. The July 31, 2009 letter written by Attorney Schiff referencing Hofmann's "FLSA and discrimination claims against Aspen Dental" and stating that Hofmann had "filed an EEOC charge and ha[d] also talked with the DOL, wage and hour division" was sufficient to provide notice to Aspen Dental that Hofmann had engaged in protected activity under the ADA and ADEA as well as the FLSA. See Kasten, 131 S.Ct. at 1330-36 (holding that a verbal complaint is sufficient to constitute protected activity under the FLSA).

In addition to filing a complaint with the DOL, Ms. Hofmann contends that she

---

[8](...continued)
v. Brown, 295 F.3d 783, 788 (7th Cir. 2002) (internal quotations omitted). In the Seventh Circuit, a plaintiff must demonstrate that he or she was subject to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly responsibilities, or a decision causing a significant change in benefits." Hardy v. Univ. of Ill. at Chi., 328 F.3d 361, 364 (7th Cir. 2003) (internal quotation marks omitted). Neither the meeting nor the verbal counseling Ms. Hofmann received resulted in any material change in her employment sufficient to constitute an adverse employment action. Because Ms. Hofmann is unable to demonstrate that these two incidents satisfy the second prong of the direct analysis, we cannot find that the meeting or the verbal counseling were retaliatory. Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 740 (7th Cir. 2006) ("Failure to satisfy any one element of the *prima facie* case is fatal to an employee's retaliation claim.") (citation omitted). Thus, the only adverse employment action we consider in our analysis is Ms. Hofmann's termination.

engaged in a second form of protected activity under the FLSA,[9] when she removed the provider schedules on which she had taken notes that she claims related to her wage complaints and provided them to her attorney in furtherance of her FLSA claim. Ms. Hofmann maintains that Aspen Dental was made aware of her conduct on September 24 or 25, 2009, when Hofmann's co-worker, Ms. Mackey, told Ms. Decker that Hofmann had given the provider schedules to her attorney in furtherance of a claim other than her EEOC claim. Aspen Dental rejoins that Ms. Hofmann's conduct, to wit, the removal of confidential documents she was given by her employer and the subsequent disclosure of those documents to her attorney, does not constitute protected activity under the anti-retaliation provision of the FLSA, and that, even if it did, genuine issues of material fact remain regarding whether Aspen Dental was aware that she removed the provider schedules in furtherance of her FLSA claim.

Whether Ms. Hofmann's act of removing the provider schedules that she claims contained notes she had taken relevant to her FLSA claim and disclosing them to her attorney in furtherance of that claim constitutes protected activity under the Act is a close question. The FLSA's anti-retaliation provision provides in relevant part that it is unlawful for an employer "to discharge ... any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the Act]." 29

---

[9] Ms. Hofmann contends that this conduct constitutes protected activity under both the FLSA and HIPAA's whistleblower provision. However, because Ms. Hofmann has not filed a claim alleging that she was retaliated against in violation of HIPAA, we address only whether her conduct constitutes protected activity under the FLSA.

U.S.C. § 215(a). The Supreme Court recently noted that the "complaint" clause of the anti-retaliation provision of the FLSA requires an interpretation "that would provide 'broad rather than narrow protection to the employee.'" Kasten, 131 S.Ct. at 1334 (quoting NLRB v. Scrivener, 405 U.S. 117, 122 (1972)) (interpreting the FLSA's "complaint" clause to include oral complaints). Because the Seventh Circuit has not addressed the precise parameters of "protected activity" under the FLSA, we look to the manner in which the courts in our sister circuits have interpreted the provision for guidance.[10] In McKenzie v. Renberg's Inc., 94 F.3d 1478 (10th Cir. 1996), the Tenth Circuit held that to engage in protected activity "the employee must step outside ... her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." Id. at 1486-87.

Assuming that the notes Ms. Hofmann made on the provider schedules were

---

[10] The parties have pointed us to a number of cases in which the Seventh Circuit and courts in other jurisdictions have analyzed whether the removal and/or disclosure of confidential documents in furtherance of a claim constitutes protected activity for purposes of Title VII. However, while we can often rely on Title VII retaliation cases for guidance as to ways to interpret such issues as causation and temporal proximity under the FLSA, these cases are not illustrative when it comes to determining what constitutes protected activity, since that term is defined by statute and the anti-retaliation provision contained in 42 U.S.C. § 2000e-3(a), which includes protection for employees who "oppos[e] any [unlawful] practice" or "participat[e] in any manner" is broader than the analogous FLSA provision. Thus, such cases provide limited assistance to us in undertaking a proper interpretation of the contours of protected activity under the FLSA. See, e.g., Randolph v. ADT Sec. Servs., Inc., 2011 WL 3476898 (D.Md. Aug. 8, 2011).

relevant to her wage claim as she asserts, these activities, had they been known at the time by Aspen Dental might reasonably have been "perceived as being directed toward the assertion of [her] rights protected by the FLSA." However, genuine issues of material fact remain regarding whether the notes Ms. Hofmann made on the provider schedules were in fact made as an aid to her pursuit of her FLSA claim, and, if they were, whether the decisionmakers at Aspen Dental were aware of such a fact.[11] Thus, with such unsettled factual issues, we cannot, at least at this stage of the litigation, determine as a matter of law whether Ms. Hofmann's removal and disclosure of the provider schedules constitutes protected activity under the FLSA.

### 2.  Causation

Even if Ms. Hofmann's removal and disclosure of the provider schedules were not protected activity under the FLSA, her actions are nonetheless relevant to a determination of whether the protected activity she did engage in, to wit, the filing of a complaint with the DOL and/or a charge of discrimination with the EEOC, were causally related to her termination. To establish causation using circumstantial evidence under the direct method of proof, a plaintiff may use evidence tending to show that the defendant's proffered non-discriminatory reason for termination is merely a pretext for retaliation. See Venturelli v. ARC Cmty. Servs., Inc., 350 F.3d 592, 601 (7th Cir. 2003) (explaining

---

[11] It is not clear from the record whether Ms. Decker understood Ms. Mackey to be referring to Ms. Hofmann's FLSA claim when Mackey reported that Hofmann had removed the provider schedules in furtherance of a claim against the company other than the EEOC claim. Ms. Decker testified that she was aware only that Ms. Hofmann had removed the provider schedules in furtherance of some claim.

that the "pretext" category of circumstantial evidence under the direct method is substantially the same as the evidence required under the indirect method). In support of her retaliation claims, Ms. Hofmann relies heavily on this evidence in an effort to prove causation. In assessing pretext, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." O'Leary v. Accretive Health, Inc., ___ F.3d ___, 2011 WL 4375684, at *8 (7th Cir. Sept. 21, 2011) (citing Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 397 (7th Cir. 2010).

Although it is not clear whether Aspen Dental's decision makers knew precisely if it was her FLSA claim as opposed to her EEOC claim that Ms. Hofmann was trying to further by removing the provider schedules, it is undisputed that Ms. Decker was at least aware that she had removed them and had disclosed them to her attorney in furtherance of one of her claims against the company. In light of this knowledge, the fact that she was terminated on the first day after returning to work following their having learned of her conduct and its connection to her legal claims could be viewed by a jury as evidence supporting Hofmann's contention that the actual reason she was terminated by Aspen was for having filed a complaint with the DOL and/or the EEOC, and not, as Aspen Dental contends, for removing and disclosing the provider schedules in violation of HIPAA.

Other genuine issues of material fact relevant to the pretext inquiry remain as well so as to make summary judgment for either party inappropriate. The apparent lack of investigation conducted by Aspen Dental regarding the reasons for Ms. Hofmann's

removal of the provider schedules before it made its termination decision, combined with the disputed evidence regarding the allegedly lackadaisical manner in which the company monitored the dissemination and use of the provider schedules up until it terminated Ms. Hofmann, raise issues regarding whether the company truly believed that Ms. Hofmann's removal of the provider schedules constituted a HIPAA violation or whether that explanation was merely a pretext for terminating her for pursuing her legal claims against Aspen Dental.[12]  In short, too many disputed material facts as well as a plethora of credibility issues that cannot properly be resolved at this stage of the litigation remain, thus precluding summary judgment for either side.  Accordingly, both Plaintiff's and Defendant's Motions for Summary Judgment are <u>DENIED</u>.

## III.    Conclusion

For the reasons detailed above, Defendant's Motion to Disqualify, Defendant's Motion for Summary Judgment, and Plaintiff's Motion for Summary Judgment are all <u>DENIED</u>.

IT IS SO ORDERED.

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Date:  09/29/2011
_____

---

[12] Neither party devotes significant attention in its briefing to Aspen Dental's other nondiscriminatory reason given for Ms. Hofmann's termination, to wit, that she was "negative" and disruptive in the workplace.  However, we find that there is sufficient disputed evidence in the current record regarding other similarly situated employees who also allegedly engaged in similar behavior, but were not disciplined or terminated for that behavior.  Resolving these issues will require credibility determinations that are not appropriately made on summary judgment. Accordingly, these arguments will need to be developed further for resolution at trial.

28

Copies to:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com

Rhett David Gonterman
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
rgonterman@zsws.com

Scott James Preston
LITTLER MENDELSON, P.C.
spreston@littler.com

Mary Lee Schiff
ZIEMER STAYMAN WEITZEL & SHOULDERS
LSchiff@zsws.com